**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000919**
**25-JAN-2019**
**08:08 AM**

NO. CAAP-17-0000919

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JR, Plaintiff-Appellee, v.
IR, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 14-1-7523)


AMENDED SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

Defendant-Appellant I.R. (**Wife**) appeals from: (1) the
Divorce Decree, filed April 7, 2017 (**Divorce Decree**); (2) the
Amended Order Re: Trial, filed April 7, 2017 (**Amended Trial
Order**); (3) the Order Re: Defendant's Motion for Reconsideration
of Amended Order and Divorce Decree, filed November 27, 2017
(**Order Denying Motion for Reconsideration of Amended Trial
Order**); (4) the Order Re: Plaintiff's Request for Payment of
Attorney Fees and Costs, filed November 27, 2017 (**Attorneys' Fees
Order**); and (5) the Order Re: Defendant's Motion for
Reconsideration, filed December 6, 2017 (**Order Denying Motion for

**Reconsideration of First Trial Order**), all entered by the Family Court of the First Circuit (**Family Court**).[1]

After an eight-day trial regarding the divorce of Plaintiff-Appellee J.R. (**Husband**) and Wife, the Family Court entered the Divorce Decree and the subsequent Attorneys' Fees Order. Wife raises five points of error on appeal arguing that the Family Court erred in: (1) excluding Wife's impeachment evidence, which purportedly countered Husband's portrayal of his pre-marital and marital debt, and erred in finding that Husband accrued $59,246 in credit card debt during the marriage when a substantial amount was pre-marital debt; (2) awarding Husband child support of $1,069 per month when there was no evidence as to Wife's current (2016) earnings; (3) finding, in the First Trial Order and the Amended Trial Order, that Wife had engaged in parental alienation; (4) entering the Divorce Decree, in that the court did not follow the language of the First Trial Order or the Amended Trial Order; and (5) awarding Husband attorneys' fees and costs when, Wife argues, by operation of Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4(a)(3), Husband's motion was deemed denied.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Wife's points of error as follows:

---

[1] The Honorable Gale L.F. Ching presided.

(1)   Wife sought to admit into evidence Exhibits RA[2] through RG, which Wife claims on appeal were for the purposes of impeaching Husband's testimony.  As relevant to her argument on appeal,[3] among the excluded exhibits was Exhibit RF, which includes checks that Husband received for consulting services he performed through his business.  It appears that there is no dispute that both parties had access to the excluded exhibits through discovery, but that Wife failed to provide the exhibits to opposing counsel for admission at trial before the Family Court's trial exhibit deadline.  Wife argued to the Family Court that the excluded exhibits should be admitted because they were intended to be "rebuttal exhibits."  The Family Court found that Wife had possession of these exhibits prior to trial and that the failure to exchange trial exhibits prior to the deadline merited their exclusion from trial.

---

[2]   Exhibit RA was separately admitted at trial.

[3]   On appeal, Wife only argues that the checks included in Exhibit RF should have been admitted as impeachment evidence.  Wife does not argue that any of the other documents included in Exhibits RA-RG should have been admitted as impeachment evidence.  Only arguments made on appeal will be considered as contentions not argued are deemed abandoned.  See Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012).

Hawaiʻi Family Court Rules (**HFCR**) Rule 16[4] states in relevant part that "[t]he [family] court in its discretion may establish a pre-trial calendar on which actions may be placed for consideration[.]" Moreover, the family courts also "have broad powers to control the litigation process before them, including the presentation of evidence." Weinberg v. Dickson-Weinberg, 123 Hawaiʻi 68, 75, 229 P.3d 1133, 1140 (2010) (citing Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawaiʻi 494, 507, 880 P.2d 169, 182 (1994)). In Richardson, the Hawaiʻi Supreme Court stated:

> Among courts' inherent powers are the powers "to create a remedy for a wrong even in the absence of specific statutory remedies[,]" and "to prevent unfair results." The courts also have inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence and may include dismissal in severe circumstances. It follows that if the trial court has the inherent power to level the "ultimate sanction" of dismissal, it necessarily has the power to take all reasonable steps short of dismissal, depending on the equities of the case.

76 Hawaiʻi at 507, 880 P.2d at 182 (citations omitted).

---

[4] HFCR Rule 16 states:

**Rule 16. CONFERENCES WITH THE COURT; FORMULATING ISSUES.**
In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:
(1) The settlement of the case;
(2) The simplification of the issues;
(3) The necessity or desirability of amendments to the pleadings;
(4) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
(5) The limitation of the number of expert witnesses;
(6) The advisability of a preliminary reference of issues to a master for findings to be used as evidence;
(7) Such other matters as may aid in the disposition of the action.
The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish a pre-trial calendar on which actions may be placed for consideration as above provided.

First, we conclude that the Family Court did not abuse its broad discretion in controlling the presentation of evidence at trial when it determined that Wife's failure to exchange certain exhibits prior to the trial exhibit deadline merited the exclusion of those exhibits from trial. See Weinberg, 123 Hawaiʻi at 75, 229 P.3d at 1140. The Family Court's conclusion that Wife had the exhibits in her possession before trial but failed to give them to opposing counsel, supports the Family Court's decision to exclude the exhibits. See Richardson, 76 Hawaiʻi at 507, 880 P.2d at 182.

Wife argues that she did not plan to use the evidence unless she needed to impeach Husband's testimony and, therefore, as impeachment exhibits they should have been admitted. A review of the trial transcript and the checks Wife now argues should have been admitted for impeachment purposes does not support Wife's argument. On appeal, Wife argues that the checks were intended to impeach Husband's claim that "he only made his salary from August to December 2015 from [a certain employer]." Wife identifies the testimony she sought to impeach, but that testimony came after Wife sought the admission of Exhibit RF, which was denied.

Impeachment evidence is evidence used to discredit a witness by, for example, catching the witness in a lie. See Black's Law Dictionary 676 (10th ed. 2014) (defining "impeachment evidence" as "[e]vidence used to undermine a witness's credibility"). Testimony that has not been given cannot be

impeached. Wife did not attempt to seek admission of the excluded exhibits for impeachment after Husband testified regarding his income from his employer for the relevant time period. Wife identifies no other testimony in the transcript that she sought to impeach with the excluded exhibits. Wife's argument that she did not plan to introduce the excluded exhibits unless it was necessary for impeachment purposes is not supported by the record. We conclude the Family Court did not abuse its discretion in excluding the excluded exhibits.[5]

Wife also argues that the Family Court erred in finding that Husband accrued $59,246 in credit card debt during the marriage when a substantial amount of that sum was pre-marital debt.

As proof of his debt at the time of marriage, Husband submitted Exhibit 39, which consisted of various documents, including notices and billing statements, showing the amounts due on five credit cards on or around the time of the parties' marriage. Exhibit 39 includes a statement from Citi for January 20 – February 17, 2011 with a Citi credit card balance of

---

[5] On appeal, Wife claims that Exhibit RF was already admitted into evidence in the pre-trial hearing for child support. Wife does not provide a citation to the appellate record to support her assertion but merely refers to the hearing transcript and the exhibit designation at the pre-trial hearing. At trial, Wife did not argue to the Family Court that the exhibit was already admitted at a pre-trial hearing and the Family Court had no opportunity to consider Wife's argument. Accordingly, the argument is waived. See State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) (generally, "if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases").

$8,586.35. The parties were married on February 28, 2011. Wife argues that her Exhibit RA showed that the balance on the Citi credit card at the date of marriage was approximately $3,000 higher than the amount shown in Exhibit 39, which was adopted by the Family Court. Wife's Exhibit RA showing a balance on the Citi card of $14,130.81 is a statement from February 18 – March 17, 2011. Taking into account the Citi statement submitted by Wife and subtracting the debts and interest incurred on that credit card on and after the date of marriage, the resulting credit card balance would be $11,907.45. However, Husband testified that additional charges made earlier in the billing period, just prior to the wedding, including a $2,328.42 expense for a Carnival cruise, were wedding and honeymoon expenses. Subtracting the $2,328.42 cruise charge from the balance on the Citi card on the date of the wedding leaves a balance of $9,579.03. This is $992.68 more than the $8,586.35 amount reflected in Exhibit 39 and accepted by the Family Court. This difference appears to be accounted for by Husband's testimony that additional charges made shortly before the date of marriage included various wedding-related expenses. Therefore, we conclude that the Family Court did not clearly err in finding that Exhibit 39 was an accurate accounting of Husband's debt at the time of marriage, as this finding is supported by substantial evidence in the record.

Insofar as the court can discern Wife's argument, Wife also appears to argue that Husband's Exhibit 39 is inconsistent

with Husband's various Asset & Debt Statements. The statements submitted by Husband list each of his creditors, the month and year the debts were incurred, the total balances owed, and the required minimum monthly payments. However, the Asset and Debt Statements do not appear inconsistent with the Family Court's findings regarding the amount of debt Husband had at the time of marriage. The Asset and Debt Statements show Husband's outstanding debts. Although the statements list the dates the debts were incurred, the Family Court reasonably interpreted the statements to mean not that the total debt was incurred on that date but, rather, the statements merely provided the cumulative total to date and, presumably, the date the debt was "incurred" actually means when the credit line was opened. Wife makes no additional discernable argument contesting the Family Court's findings regarding the amount of debt accrued during the parties' marriage. The Family Court's findings with respect to Husband's debt at the time of marriage and the parties' jointly accrued debt are not clearly erroneous.

(2) Wife argues that the Family Court erred in awarding Husband child support of $1,069 per month when there was no evidence as to Wife's current (2016) earnings. Wife contends that, because the Family Court rejected the evidence she offered with respect to her current income as not credible, the Family Court erred in making a finding regarding her current income to calculate child support.

8

The Family Court made numerous findings regarding Wife's claims regarding her income and business expenses between 2012-2016, finding that Wife's testimony was not credible. Wife challenges none of these findings on appeal. The Family Court entered into evidence, *inter alia*, Wife's 2015 IRS Form 1099 (**2015 Form 1099**), which showed that in 2015, the year immediately before trial, her income was $112,780.62. It appears that the Family Court extrapolated Wife's "current" income from her income earned in 2015 as reflected on her 2015 Form 1099. Accordingly, in its Finding of Fact (**FOF**) 14, the Family Court found "Wife had a gross monthly income of $9,398.39," which was the amount used on the Child Support Worksheet to determine the appropriate level of child support. Wife does not challenge FOF 14 on appeal. The Family Court's estimate of Wife's current income, based on the evidence that it found credible regarding her most recent full years' income in 2015, was not clearly erroneous. Although Wife's income may vary year to year based on the nature of her position as an independent realtor associate, Wife held the same job in 2016 as she did in 2015. Wife made no argument as to why she would make substantially less than in 2015, and she provided no other credible evidence showing her "current" income. On this record, the Family Court's finding regarding Wife's income was not clearly erroneous as there is substantial evidence in the record to support it.

(3) Wife argues that the Family Court erred in finding in its First Trial Order and Amended Trial Order that Wife had

9

engaged in parental alienation. Wife challenges the following finding, which is included in both the First Trial Order and the Amended Trial Order:

> The Court notes that there is evidence of "Parental Alienation" in which both [Husband] and [Wife] have contributed to with the majority of such appearing to be more from the [Wife], which has adversely affected the Minor's emotional, psychological and educational development.

The Family Court's finding above is supported by substantial evidence. Dr. Reneau Kennedy (**Dr. Kennedy**), a clinical and forensic psychologist, testified extensively regarding her observations and expert opinion regarding parental alienation behaviors exhibited by the parties' child (**Child**). The Family Court made numerous factual findings regarding Dr. Kennedy's testimony regarding parental alienation behaviors exhibited by the Child, which the Family Court found credible and none of which are specifically challenged by Wife on appeal. Dr. Kennedy stated that it was her opinion that the "[Child] historically and currently exhibits behaviors of alienation regarding his nonpreferred parent, who is father." Dr. Kennedy also testified regarding the harms caused to children who display parental alienation behaviors. Dr. Kennedy testified that Wife's failure to include Husband in care plans for the Child contributed to Child's alienation and was not in his best interests. Nicole Cummings, Esq., who was appointed the guardian ad litem (**GAL**) by stipulation of the parties, expressed the same concerns regarding the Child's behaviors that demonstrated parental alienation. The GAL testified that the Child's behavior

10

with Husband did not match the image portrayed by Wife or comments made by Child while he was under Wife's care that indicated the Child was afraid of Husband and did not want to be with him.

The evidence showed that the Child exhibited evidence of "cognitive distortions," and there was testimony that Wife's chosen doctor for the Child reenforced the Child's "alignment" with Wife and his perception that Wife was good and Husband was bad. There was also testimony that Wife made unfounded allegations against Husband and was negative regarding him, which were picked up and repeated by the Child. The Family Court's inference from the evidence, i.e., that the Child's behaviors exhibiting parental alienation from Husband was caused in large part by Wife, is a reasonable inference from the evidence.

Wife also argues that the Family Court erred in awarding sole physical custody to Husband. Wife argues that no witness testified that it would be in the best interests of the Child for sole physical custody to be awarded to Husband and that the finding is not supported by any evidence in the record.

HRS § 571-46 (Supp. 2017)[6] provides the

---

[6]     HRS § 571-46 states, in relevant part:

**§ 571-46 Criteria and procedure in awarding custody and visitation; best interest of the child.** (a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

(1)     Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;

. . . .

(b)     In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:

(1)     Any history of sexual or physical abuse of a child by a parent;

(2)     Any history of neglect or emotional abuse of a child by a parent;

(3)     The overall quality of the parent-child relationship;

(4)     The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;

(5)     Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(6)     The physical health needs of the child;

(7)     The emotional needs of the child;

(8)     The safety needs of the child;

(9)     The educational needs of the child;

(10)    The child's need for relationships with siblings;

(11)    Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(12)    Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

(13)    Any evidence of past or current drug or alcohol abuse by a parent;

(continued...)

criteria and procedure for awarding custody and visitation of children in, *inter alia*, divorce actions. HRS § 571-46(a)(1) states:

> (1) Custody should be awarded to either parent or to both parents according to the best interests of the child, and the court also may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child.

The Hawai'i Supreme Court has instructed that:

> Hawai'i courts have consistently adhered to the best interests of the child standard as paramount when considering the issue of custody. In so doing, the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met.

Fisher v. Fisher, 111 Hawai'i 41, 50, 137 P.3d 355, 364 (2006). Further, "[t]his court is keenly aware that custody, visitation, and relocation decisions should be overturned only in the rarest

---

[6](...continued)

> (14) The mental health of each parent;
>
> (15) The areas and levels of conflict present within the family; and
>
> (16) A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. Such wilful misuse may be considered only if it is established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular family circumstance the wilful misuse tends to show that, in the future, the parent who engaged in the wilful misuse will not be able to cooperate successfully with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of the best interests of the child. For the purposes of this section, when taken alone, the voluntary dismissal of a petition for protection from abuse shall not be treated as prima facie evidence that a wilful misuse of the protection from abuse process has occurred.

of cases, where there has been a 'manifest abuse of discretion.'" Doe v. Doe, 120 Hawai'i 149, 179, 202 P.3d 610, 640 (App. 2009) (quoting Sabol v. Sabol, 2 Haw. App. 24, 31, 624 P.2d 1378, 1383 (1981)).

In addition to the findings regarding parental alienation discussed above, the Family Court made numerous additional findings relevant to the best interests of the Child in terms of his physical custody, none of which are specifically challenged by Wife on appeal. It is well-settled that findings of fact not challenged on appeal are binding on the appellate court. See Balogh v. Balogh, 134 Hawai'i 29, 33 n.3, 332 P.3d 631, 635 n.3 (2014) (unless challenged on appeal, family court's remaining findings of fact are binding on the appellate court); see also Bremer v. Weeks, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004). The above findings support the Family Court's award of sole physical custody of the Child to Husband.

Accordingly, we conclude that the Family Court did not err in its findings regarding parental alienation or in exercising its discretion in reaching its custody decision.

(4) Wife argues that the Family Court erred in entering the Divorce Decree in that the court did not follow the language of the First Trial Order or Amended Trial Order. Wife contends that there is no evidence that she ever had the chance to object to the content of the Divorce Decree and that the Family Court made substantial changes and additions from its prior orders without any explanation or hearing as to why it was doing so.

First, Wife provides no authority to support the proposition that the Family Court is bound by previous orders or that it does not retain the right to modify previous decisions. To the contrary, the general rule is that "so long as a trial court retains jurisdiction, it always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders." Chun v. Bd. of Trs. of Emps.' Ret. Sys. of Haw., 92 Hawai'i 432, 441, 992 P.2d 127, 136 (2000) (citations and internal quotation marks omitted). Wife cites no authority for her proposition that the Family Court must expressly state its reasons for making changes to its trial orders, and we find none. The Family Court, upon the request of Wife, provided detailed findings of fact and conclusions of law regarding its final decisions as represented in the Amended Trial Order and the Divorce Decree. Unless those decisions constitute an abuse of the Family Court's discretion or if a finding of fact is clearly erroneous or a conclusion of law is wrong, the Family Court's decision will not be disturbed on appeal. See Brutsch v. Brutsch, 139 Hawai'i 373, 381, 390 P.3d 1260, 1268 (2017).

It appears that the only substantive changes from the First Trial Order were made by the Family Court in response to Wife's Motion for Reconsideration. In her Motion for Reconsideration, Wife objected that the Family Court had awarded Husband sole physical custody but had set forth a detailed joint physical custody schedule granting both parents essentially equal time with the Child. Wife also asked the Family Court to address debt equalization.

In its Amended Trial Order and Divorce Decree, the Family Court addressed both of these issues. The Family Court affirmed its decision to grant Husband sole physical custody and removed the detailed custody schedule to which Wife had objected. The Family Court did not, however, accept Wife's proposed remedy, joint physical custody. In addition, the Family Court also resolved Wife's request that the court address the debt equalization between the parties. On appeal, Wife argues that it is unknown why the court made the changes it did. However, the Family Court's decision is supported by the detailed FOFs and Conclusions of Law (**COLs**) requested by Wife.

Finally, Wife asserts that "[s]ubstantial evidence was lacking to support the Family Court's findings." Wife provides no argument or specificity as to which facts are not supported. Therefore, this contention will be disregarded. See Kakinami, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16 (citing In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position")).

We conclude that Wife's fourth point of error is without merit.

(5) Wife argues that the Family Court erred in awarding Husband attorneys' fees and costs when, by operation of HRAP Rule 4(a)(3), his motion for fees and costs was denied ninety days after the filing of the motion.

On March 10, 2017, in Husband's written Closing Argument, Husband requested attorneys' fees pursuant to HRS § 580-47(a) (2006 & Supp. 2017).[7]

---

[7]     HRS § 580-47 states, in relevant part,

> **HRS 586-47 Support orders; division of property.** (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. . . .

> (b) An order as to the custody, management, and division of property and as to the payment of debts and the attorney's fees, costs and expenses incurred in the divorce shall be final and conclusive as to both parties subject only to appeal as in civil cases. The court shall at all times, including during the pendency of any appeal, have the power to grant any and all orders that may be necessary to protect and provide for the support and maintenance of the parties and any children of the parties to secure justice, to compel either party to advance reasonable amounts for the expenses of the appeal including attorney's fees to be incurred by the other party, and to amend and revise such orders from time to time.

>         . . . .

> (f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or
> (continued...)

17

On March 17, 2017, the Family Court in its First Trial Order found that Husband was entitled to reasonable attorneys' fees and directed Husband to file a detailed declaration as to fees and costs and granted Wife seven days in which to file any objections. Husband submitted his attorneys' fees declaration on March 24, 2017. On appeal, Wife appears to regard this submission as a "motion" for attorneys' fees. Wife filed a motion for reconsideration of the Amended Trial Order on March 29, 2017, in which she asked the court to reconsider its decision regarding, *inter alia*, the award of attorneys' fees. Wife also filed her objections to the request for attorneys' fees on April 4, 2017. The Amended Trial Order is identical to the First Trial Order with respect to the Family Court's finding that Husband was entitled to reasonable attorneys' fees. On April 7, 2017, the Divorce Decree also provided that Husband was entitled to reasonable attorneys' fees and instructed that the court would issue a separate order regarding the attorneys' fees award.

On April 17, 2017, Wife filed her second motion for reconsideration which again asked the court to reconsider its decision with respect to attorneys' fees. Wife also requested that the Family Court issue FOFs and COLs if her motion was not granted in its entirety. On November 27, 2017, the Family Court entered its Order Awarding Attorneys' Fees, awarding Husband one-third of his requested attorneys' fees, GET, and costs, in the amount of $35,567.19.

---

[7](...continued)
an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

On the same day, the Family Court also entered its Order Denying Motion for Reconsideration of Amended Trial Order. On December 6, 2017, the Family Court entered its Order Denying Motion for Reconsideration of First Trial Order. Wife filed a notice of appeal on December 27, 2017. On January 5, 2018, Wife filed a request for FOFs and COLs. On February 20, 2018, the Family Court issued its FOFs and COLs.

Wife argues that Husband's "motion" for fees and costs was denied ninety days after the filing of the motion or the subsequently-filed Divorce Decree, by operation of HRAP Rule 4(a)(3). HRAP Rule 4(a)(3) provides, in relevant part:

> (3) TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS. If any party files a timely motion for judgment as a matter of law, to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, <u>and court or agency rules specify the time by which the motion shall be filed</u>, then the time for filing the notice of appeal is extended for all parties until 30 days after entry of an order disposing of the motion. The presiding court or agency in which the motion was filed shall dispose of any such post-judgment motion by entering an order upon the record within 90 days after the date the motion was filed. If the court or agency fails to enter an order on the record, then, within 5 days after the 90th day, the clerk of the relevant court or agency shall notify the parties that, by operation of this Rule, the post-judgment motion is denied and that any orders entered thereafter shall be a nullity. The time of appeal shall run from the date of entry of the court or agency's order disposing of the post-judgment motion, if the order is entered within the 90 days, or from the filing date of the clerk's notice to the parties that the post-judgment motion is denied pursuant to the operation of the Rule.
> The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order.

(Emphasis added).

HRAP Rule 4(a)(3) is plainly intended to provide a framework for when, and under what circumstances, the time to file an appeal is affected by post-judgment motions, including specifically what kind of post-judgment motions affect the deadline to file an appeal. HRAP Rule 4(a)(3), by its own terms,

19

applies only to motions for which a time limit is established by court or agency rule. HRAP Rule 4(a)(3) specifically states that the rule applies to timely motions for attorneys' fees and costs for which "court or agency rules specify the time by which the motion shall be filed[.]" HRS § 580-47(a) allows the Family Court to award attorneys' fees and states:

> Upon granting a divorce, <u>or thereafter</u> if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, <u>the court may make any further orders as shall appear just and equitable</u> . . . (4) <u>allocating, as between the parties, the responsibility for</u> the payment of the debts of the parties whether community, joint, or separate, and the <u>attorney's fees, costs, and expenses incurred by each party by reason of the divorce</u>. . . .

(Emphasis added).

No time limit is specified in the statute and the language provides that the Family Court has the power to award attorneys' fees after the granting of a divorce. The parties have not identified any Family Court rule that provides a time limit regarding the request for attorneys' fees in a divorce action, and the court has found none. See Cox v. Cox, 125 Hawai'i 19, 29, 250 P.3d 775, 785 (2011) (no time limit for Family Court Rule 68 request for attorneys' fees after offer of settlement and request for fees can even be filed after appeal of judgment is completed). Therefore, we conclude that HRAP Rule 4(a)(3) is not applicable and did not divest the Family Court of the power to award attorneys' fees in this case. Furthermore, the Attorneys' Fees Order was entered prior to Wife's filing of her notice of appeal, so the Family Court still retained jurisdiction over the matter when it entered the Attorneys' Fees Order. See Cox, 125 Hawai'i at 29, 250 P.3d at 785 (family court

20

is divested of jurisdiction to hear Rule 68 motion for attorneys' fees upon filing of notice of appeal).

For these reasons, we affirm the Family Court's April 7, 2017 Divorce Decree, April 7, 2017 Amended Trial Order, November 27, 2017 Order Denying Motion for Reconsideration of Amended Trial Order, November 27, 2017 Attorneys' Fees Order, and December 6, 2017 Order Denying Motion for Reconsideration of First Trial Order.

DATED: Honolulu, Hawai'i, January 25, 2019.

On the briefs:

Earle A. Partington,
for Defendant-Appellant.

John C. Bryant, Jr.,
Lynne M. Youmans,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

21